## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

WESLEY OZIER and
IRVIE OZIER,

     Plaintiffs,

v.

                                          Civil Action No. TDC-22-2396

LIDL US OPERATIONS, LLC,

     Defendant.

## MEMORANDUM OPINION

Plaintiffs Wesley and Irvie Ozier have filed a civil action against Defendant Lidl US Operations, LLC ("Lidl"), alleging statutory and common law tort claims arising from Lidl's construction and operation of a grocery store across the street from Plaintiffs' home. Pending before the Court is Lidl's Motion to Dismiss, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Lidl's Motion will be GRANTED IN PART and DENIED IN PART.

## BACKGROUND

### I.    Factual Background

Plaintiffs are residents of a property ("the Ozier Property") located on Woodmore North Boulevard in Bowie, Maryland, which they purchased in September 2012. In 2018, Lidl, a discount grocery retail chain, opened a store location at 13401 Annapolis Road in Bowie, Maryland, across the street from the Ozier Property.

According to Plaintiffs, during the construction of the new grocery store in 2017, the construction activities generated excessive noise and caused their home to shake. Over the next

several months and into 2018, Plaintiffs lodged multiple complaints with various representatives of Lidl, including with the construction foreman at the job site. They also reported the noise and shaking to the Prince George's County Department of Permitting, Inspection, and Enforcement, the Office of the Bowie City Counsel, and other government officials and bodies. As of January 2018, the continuing disruptive noise frequently occurred between 2:00 a.m. and 5:00 a.m., the shaking of the house continued, and cracks began to appear in Plaintiffs' driveway. These effects from the construction of the store continued into and through the summer of 2018.

The new Lidl grocery store opened on September 12, 2018. Once the store opened, the streets around the Ozier Property became severely congested with traffic, and Lidl customers parked on streets in the neighborhood to access the Lidl store more easily, resulting in overcrowding of the streets and further traffic issues. At times, customers used Plaintiffs' driveway and front yard as a shortcut to get to and from the store. Mr. Ozier reported the parking issues to the Prince George County Police Department ("PGCPD"). On November 20, 2018, a suspected shoplifter was chased from the grocery store onto the Ozier Property. The shoplifter hid alongside the house and attempted to steal two bicycles from Plaintiffs. When Mr. Ozier reported this issue to a Lidl District Manager, the Lidl official laughed about it, and Lidl took no responsive action and adopted no measures to prevent future similar incidents.

In addition to the issue of individuals associated with Lidl entering onto the Ozier Property, the opening of the store brought additional noise disruptions. In December 2018, Mr. Ozier reported to a Lidl corporate representative that delivery trucks had made a practice of idling for several hours during their delivery drop-off period in the late evenings and early mornings. Mr. Ozier made additional reports of this issue on multiple occasions from late 2018 through June 2019

2

and also reported it to Maryland State Delegate Erek Barron. The noise and disruption caused by Lidl delivery trucks idling through the night persisted up to the date of the filing of the Complaint.

Plaintiffs also contend that, since construction of the Lidl grocery store began and since its opening, Lidl has failed to take appropriate measures to control trash around the grocery store. Specifically, Plaintiffs state that the trash dumpsters for the grocery store are located close to the Ozier Property, which results in a constant foul smell during the summer that affects them in their home. Further, trash from the dumpster area has been blown onto their property, including their fenced-in backyard, and litter such as grocery bags and bottles have been left on the Ozier Property. Finally, they complain about the disruption caused when the large commercial trash trucks arrive to remove trash from the dumpsters between 3:00 a.m. and 6:00 a.m.

Plaintiffs' multiple attempts to resolve the noise and other issues with Lidl, including by filing complaints with corporate representatives and local government officers, resulted in a conference call on June 11, 2019 with representatives from the office of Prince George's County Council member Derrick Davis and the PGCPD. On that conference call, PGCPD Corporal Clagett, who had been aware of the matter since December 2018 and had previously told Plaintiffs that he would issue fines to Lidl for noise ordinance violations, told Plaintiffs that an investigation had concluded that Lidl was not in violation of any noise ordinances. According to Plaintiffs, however, Ms. Ozier had spoken to two inspectors who were part of the investigation, who told her that there were violations of noise ordinances. No results of that investigation have been produced.

## II.   Procedural History

Plaintiffs filed a Complaint in the Circuit Court for Prince George's County, Maryland which was removed to this Court. Plaintiffs have asserted six causes of action in the following numbered counts based on the conduct described above:  (1) trespass; (2) private nuisance; (3) a

3

violation of section 3–401(c) of the Environment Article of the Maryland Code, which authorizes the establishment of noise level limits, Md. Code Ann., Env't § 3–401(c) (LexisNexis 2013); (4) a violation of Section 14–124 of the Real Property Article of the Maryland Code, which defines a nuisance in Prince George's County, Md. Code Ann., Real Prop. § 14–124 (LexisNexis 2013); (5) negligence; and (6) intentional infliction of emotional distress.  Lidl has now filed a Motion to Dismiss all counts.

## DISCUSSION

In its Motion, Lidl seeks dismissal of all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Specifically, it seeks dismissal on the grounds that (1) Lidl cannot be held liable for trespass by third parties, and Plaintiffs have failed to plead sufficient facts to show that Lidl intentionally allowed trash or odors to enter the Ozier Property; (2) the statutes upon which Counts 3 and 4 are predicated do not create a private right of action; and (3) Plaintiffs have failed to plead facts establishing the necessary elements of private nuisance, negligence, or intentional infliction of emotion distress.

## I.    Legal Standard

To defeat a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Legal conclusions or conclusory statements do not suffice. *Id.*  The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005).

4

## II.    Trespass

In their trespass claim, Plaintiffs allege that Lidl has trespassed and continues to trespass onto their property by allowing customers or shoplifters to enter the Ozier Property, allowing trash to be blown onto their yard, and causing a constant smell on their property in the summertime. Lidl contends that it cannot be liable for the alleged trespass of third parties and that Lidl did not consciously intend to let trash blow onto the Ozier Property.  Under Maryland law, "trespass is generally defined as an intentional or negligent intrusion upon or to the possessory interest in property of another." *Uthus v. Valley Mill Camp, Inc.*, 246 A.3d 1225, 1239 (Md. 2021) (quoting *Litz v. Md. Dep't of Env't*, 131 A.3d 923, 936 (Md. 2016)).  To prevail in a trespass action, plaintiffs must establish: "(1) an interference with a possessory interest in [their] property; (2) through the defendant's physical act or force against that property; (3) which was executed without [their] consent." *Id.*  To constitute a trespass, "it is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter."  Restatement (Second) of Torts § 158(a) cmt. I (Am. L. Inst. 1965); *see Hanna v. ARE Acquisitions, LLC*, 929 A.2d 892, 897 (Md. 2007) (stating that one is subject to liability for a trespass when one intentionally causes a thing or a third person to enter land which is in the possession of another); *see also Rudd v. Electrolux Corp*, 982 F. Supp. 355, 370 (M.D.N.C. 1997) (stating that a defendant may be liable for a trespass when contaminants will, to a substantial certainty, reach the plaintiff's property).  A defendant may be liable for trespass committed by a third party if the defendant "(1) commands or requests a third person enter another's property; or (2) by physical duress causes a third person to enter another's property." *CDS Family Trust v. Martin*, No. 1:15-CV-02584-JMC, 2020 WL 7319269, at *3 (D. Md. Dec. 10, 2020) (quoting Restatement (Second) of Torts § 158(a) cmt. j).  Without strictly adopting this standard, a Maryland court has also considered a trespass to potentially

5

include "recklessly or negligently" causing a third party to trespass if it "causes harm to the land, to the possessor, or to a thing or a third person." *Montgomery v. Remsburg*, 810 A.2d 14, 35 (Md. Ct. Spec. App. 2002) (quoting Restatement (Second) of Torts § 165), *rev'd on other grounds*, 831 A.2d 18 (Md. 2003). The harm can include an invasion occurring on the land that causes a threat to physical safety. *See id.* at 36.

Here, as to trespass by third parties, Lidl is correct that the trespass claim cannot proceed based on the theory that Lidl was responsible for the entry of customers onto the Ozier Property to use it as a shortcut to the grocery store, as there are no allegations that Lidl had any role in causing such entries. The Motion will be granted as to this part of the claim. However, Plaintiffs have alleged that Lidl personnel have chased several shoplifters onto their property, where they were later arrested by the police. These shoplifters arguably entered the property under duress, and viewing the allegations in the light most favorable to Plaintiffs, Lidl personnel may have recklessly or negligently caused them to enter and pose a threat to Plaintiffs. At this stage, therefore, the Court will deny the Motion as to this aspect of the trespass claim.

Plaintiffs have also alleged that Lidl has engaged in trespass by allowing trash to be blown and spread over their front lawn, backyard, and driveway. In their memorandum in opposition to the Motion, Plaintiffs note that Lidl leaves its trash dumpsters open and uncovered, and it places open shopping carts with overflowing trash in the dumpster area, thereby creating a second source of trash that blows onto the Ozier Property. They further state that they have asked Lidl to erect fencing to prevent the trash from entering their property, but Lidl has refused. Generally, a party may not amend its complaint through allegations made in a brief opposing a motion to dismiss. *E.I. du Pont de Nemours and Co. v. Kohn Indus., Inc.*, 637 F.3d 435, 449–50 (4th Cir. 2011). However, even without these additional facts, the Court finds that the Complaint would establish

a valid trespass claim based on improper disposal of materials on one property which foreseeably migrate onto the property of another. *See* Restatement (Second) of Torts § 158(a) cmt. i (stating that a trespass claim may arise where a defendant piles sand on its property near a boundary which slides onto a neighbor's property by force of gravity alone). Here, viewing the allegations in the light most favorable to Plaintiffs, as is required at this stage, Plaintiffs have alleged multiple intrusions by trash blown by the wind onto their property, and during this time frame they complained generally to Lidl about its trash operations, thus putting Lidl on notice that future intrusions of trash were likely to occur. The allegations support the conclusion that it was reasonably foreseeable to Lidl that trash from its dumpsters placed near the property boundary would be blown by the wind onto the Ozier Property. Accordingly, the Court will deny the Motion to Dismiss as to this part of the trespass claim in Count 1.

### III.   Private Nuisance

Lidl argues that Count 2 should be dismissed because Plaintiffs have not pleaded facts sufficient to support a private nuisance claim. Under Maryland law, a claim of private nuisance requires that plaintiffs prove that the defendant caused an unreasonable and substantial interference with the plaintiffs' reasonable use and enjoyment of their property. *Exxon Mobil v. Albright*, 71 A.3d 30, 94 (Md. 2013). The interference must be "substantial and unreasonable and such as would be offensive or inconvenient to the normal person." *Wash. Suburban Sanity Comm'n v. CAE-Link Corp.*, 622 A.2d 745, 750 (Md. 1993).

In particular, Lidl relies on *Gallagher v. HV Pierhomes*, 957 A.2d 628 (Md. Ct. Spec. App. 2008), in which the court found that an activity that was "reasonable in time, place, manner, and duration and did not substantially interfere with [the plaintiff's] use and enjoyment of her land" was not a nuisance. *Id.* at 639. In *Gallagher*, the plaintiff sued a development corporation for

negligence, strict liability, and public and private nuisance based on the allegation that vibrations from the developer's pile driving in her neighborhood caused damage to her home, including cracks in the plaster walls. *Gallagher*, 957 A.2d at 630–31. The Maryland Court of Special Appeals held that the private nuisance claim could not be sustained because the pile driving took place in a reasonable time, place, and manner, and because pile driving constituted one of the "occasional annoyance[s] and discomforts incidental to city life." *Id.* at 639.

Here, however, Plaintiffs' core complaint is that Lidl has not conducted the disruptive activities relating to its grocery store in a reasonable time, place, manner, and duration. As in *Gallagher*, Plaintiffs have alleged physical damage caused by vibrations from construction activity, specifically, cracks in their driveway. However, they have also identified multiple other disruptive activities that have continued for numerous months, including significant noise disturbances in the middle of the night consisting of grocery delivery and garbage trucks left idling, garbage trucks conducting trash pickup activities, and "loud fire alarms" sounding at the store at late hours. Compl. ¶ 18. "If noise causes physical discomfort and annoyance to those of ordinary sensibilities, tastes and habits, and seriously interferes with the ordinary comfort and enjoyment of [the plaintiffs'] home[], and thus diminishes the value of the use of their property rights, it constitutes a private nuisance." *Gorman v. Sabo*, 122 A.2d 475, 476 (Md. 1956). Given the timing of Lidl's activities, it is reasonable to infer that they could cause disruptions to Plaintiffs' ability to sleep through the night.

Plaintiffs have also alleged that the trash from the dumpsters immediately adjacent to their property has caused a foul odor, and that trash is continually strewn upon the Ozier Property. *See Bishop Processing Co. v. Davis*, 132 A.2d 445, 447, 449 (Md. 1957) (stating that a chicken processing plant which produced "a shocking and nauseating stench and odor" constituted a

8

nuisance). Finally, they allege that Lidl's activities have caused significant issues with traffic on their street and customers and shoplifters cutting through their property.

All of these specific, adverse impacts on Plaintiffs' use and enjoyment of their property distinguish this case from *Exxon Mobil*, relied up by Lidl, in which the purported nuisance was groundwater allegedly contaminated by a gasoline leak, but there was insufficient evidence of a substantial interference with the use and enjoyment of the property because the evidence did not show actual contamination of the water supply, and the actions taken by residents were found to be primarily the result of subjective fear of contamination. *See Exxon Mobil*, 71 A.3d at 95–96. Here, Plaintiffs have alleged concrete harms to the use and enjoyment of their property directly caused by Lidl's activities, including the foul smell from Lidl's dumpsters, the noise from Lidl's trucks idling and collecting trash in the middle of the night that would prevent them from sleeping, and the shaking of their house to the point that cracks form in the driveway. Thus, at this early stage, viewing the allegations in the light most favorable to Plaintiffs, the Court finds that they are sufficient to state a claim for substantial interference with their use and enjoyment of Plaintiffs' property as necessary for a private nuisance action. The Motion will be denied as to Count 2.

## IV.    Maryland Statutes

Lidl also seeks dismissal of Counts 3 and 4 of the Complaint, which allege violations of Maryland environmental and real property statutes. Lidl contends that these claims should be dismissed because neither statute creates a private right of action.

Count 3 is a claim under section 3–401(c) of the Environment Article of the Maryland Code, which requires the Maryland state government and Maryland political subdivisions to consider certain factors when adopting sound level limits and noise control rules. Md. Code Ann., Env't § 3–401(c). Plaintiffs assert that Lidl has violated the noise limitations established under

9

this provision. The statute, however, provides that if a political subdivision determines that its noise level limitation has been violated, "after notice to the alleged violator, [the subdivision] may issue a corrective order," Md. Code. Ann., Env't § 3–404, and that "a political subdivision may bring an action to enjoin any conduct that is a willful violation of any provision of this title or any rule, regulation, or order adopted or issued under this title." *id.* § 3–405(a). It does not contain language allowing private plaintiffs to sue for violations of the noise limits. Because Plaintiffs have sued as private plaintiffs and do not represent a political subdivision, Count 3 will be dismissed.

In Count 4, Plaintiffs allege that Lidl has violated a state nuisance law directly applicable to Prince George's County, which defines a nuisance as an "act or condition knowingly created" which both violates a local code and "significantly affects other residents of the neighborhood," "negatively impacts the value of neighboring property," and is "injurious to public health, safety, or welfare of neighboring residents," or "obstructs the reasonable use of other property in the neighborhood." Md. Code Ann., Real Prop. § 14–124(a)(4). Count 4 seeks an injunction against Lidl for causing such a nuisance. The section of the statute entitled "Injunctive and other equitable relief," however, provides only that "[a] community association may seek injunctive relief and other equitable relief in the circuit court for abatement of a nuisance" upon fulfillment of certain notice provisions. *Id.* § 14–124(c)(1). A community association is defined as "a Maryland nonprofit association, corporation, or other organization" which is located outside of the municipal corporation and meets certain other membership and governance requirements. *Id.* § 14–124(a). Where Plaintiffs have not alleged that they are filing suit on behalf of a community association, they do not have a viable claim for injunctive relief under this statute. Count 4 will therefore be dismissed.

10

## V.    Negligence

Lidl contends that the negligence claim in Count 5 should be dismissed.  In order to state a claim for negligence, a plaintiff must show that "the defendant was under a duty to protect the plaintiff from injury," "the defendant breached that duty," "the plaintiff suffered actual injury or loss," and "the loss or injury proximately resulted from the defendant's breach of the duty." *Rosenblatt v. Exxon*, 642 A.2d 180, 188 (Md. 1994).  Specifically, Lidl argues that this claim fails because Plaintiffs have not alleged sufficient facts to show that Lidl owed a duty of care to Plaintiffs which it breached, and because Plaintiffs have not alleged a direct physical injury to their property.

As to duty of care, Lidl acknowledges that under Maryland law, a property owner owes a duty of care to owners and occupants of neighboring properties to avoid harm to those neighboring properties.  Mot. Dismiss at 10-11, ECF No. 12-1 (citing *Steamfitters Local Union No. 602 v. Erie Ins. Exch.*, 209 A.3d 158, 170 (Md. Ct. Spec. App. 2019)).  However, Lidl argues that there is no duty of care here because, under *Steamfitters Local Union No. 602 v. Erie Ins. Exch.*, 209 A.3d 158 (Md. Ct. Spec. App. 2019), Maryland law recognizes only a duty of care to protect neighboring property owners from dangerous conditions, that the "bar is high," and that such dangerous conditions include pollution of groundwater that prevents an owner from selling the property or similarly serious issues.  Mot. Dismiss at 12 (citing *Steamfitters Local Union No. 602*, 209 A.3d at 173).

This argument fails.  Although *Steamfitters* analyzed a case involving a potentially dangerous condition, it did not establish any particular level of danger that must be imposed. *Steamfitters Local Union No. 602*, 209 A.3d at 173.  Under Maryland law, "the occupier of land owes a duty to occupants of neighboring land to use care when conducting activities on the land

11

so as to avoid causing harm to the neighboring land." *Rosenblatt* 642 A.2d at 189; *see also La Belle Epoque, LLC v. Old Europe Antique Manor, LLC*, 958 A.2d 269, 283 (Md. 2008) (listing cases establishing a duty of care to neighboring property owners). While negligence cases involving neighboring properties have discussed whether "a dangerous condition" was created, that term is only fairly construed as referring to an activity or condition that can cause some harm to the neighboring property that results in damages, which is itself an element of a negligence claim. *See La Belle Epoque, LLC*, 958 A.2d at 283. For example, in *La Belle Epoque*, the court found a viable negligence claim based on the fact that a business owner had negligently piled trash in a way that caused water to flow into the neighboring business. *La Belle Epoque*, 958 A.2d at 271–72. Here, Plaintiffs have alleged at least one activity that caused such a harm: the Complaint states that during construction of the new Lidl grocery store, heavy machinery caused their house to shake and created noticeable cracks in their driveway.

These same allegations also refute Lidl's argument that the negligence claim fails because Plaintiffs have not alleged any physical injury to the Ozier Property. In fact, "no proof of physical harm to property is required to recover under a negligence" theory, because a deprivation of "substantial benefits of [plaintiffs'] property" can suffice to show injury in a negligence action. *Exxon Mobil*, 71 A.3d at 96–97. Nevertheless, where Plaintiffs have alleged a physical injury to the property, specifically, the cracks in the driveway, there is no need to consider whether the allegations sufficiently allege a deprivation of the substantial benefits of the property. Because Plaintiffs have sufficiently alleged a duty of care, a breach of that duty, and an injury to land that can establish damages, they have sufficiently pleaded a negligence claim. The Motion will be denied as to Count 5.

## VI.    Intentional Infliction of Emotional Distress

Lidl argues that the Complaint has not alleged sufficient facts to plead all the elements of a claim for intentional infliction of emotional distress ("IIED") as alleged in Count 6.  To establish an IIED claim under Maryland law, a plaintiff must show (1) intentional or reckless conduct; (2) that the conduct was extreme and outrageous; (3) that the plaintiff suffered severe emotional distress; and (4) that there was a causal connection between the conduct and the emotional distress. *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977).  For conduct to be "extreme and outrageous," it must "go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting Restatement (Second) of Torts § 46 cmt. d). For emotional distress to meet the standard of severity, it must be "so severe that no reasonable [person] could be expected to endure it."  *Id.* at 616 (Restatement (Second) of Torts § 46 cmt. j).

In the Complaint, Plaintiffs contend that Lidl's actions support an IIED claim because Lidl has permitted intentional and reckless actions to continue to occur and, consequently, Plaintiffs and their children "are scared to live in their own house" and "continue to be woken up at night." Compl. ¶ 70.  The allegations are insufficient to establish that Lidl's conduct was sufficiently outrageous as to be "utterly intolerable in a civilized community." *Harris*, 380 A.2d at 614.  More outrageous and extreme actions have been found not to rise to the necessary level to sustain an IIED claim.  *See Hamilton v. Ford Motor Credit Co.*, 502 A.2d 1057, 1060, 1064 (Md. 1986) (stating that the acts of a company seeking to repossess a vehicle of persistently calling the plaintiff's home phone, including a late night call, and yelling and issuing threats to sue and ruin the plaintiff's credit and take her property were in bad taste and poor judgment, but did not rise to the level of extreme and outrageous conduct); *Kashaka v. Baltimore Cnty.*, 450 F. Supp. 2d 610, 613, 620 (D. Md. 2006) (stating that the acts of a police officer who illegally searched the

13

plaintiff's home and vehicle and issued more than 60 citations against him did not rise to the level of extreme and outrageous conduct). Further, the Complaint asserted that Plaintiffs and their children were woken up by Lidl's actions and were scared, but it did not provide facts demonstrating that their emotional distress met the standard of severity that no reasonable person could be expected to endure. *See Harris*, 380 A.2d at 616; *Hamilton*, 502 A. 2d at 1064 (holding that difficulty sleeping and embarrassment was not a response so acute that no reasonable person could be expected to endure it); *Kashaka*, 450 F. Supp. 2d at 620 (stating that plaintiff's claim to have suffered humiliation, loss of income, reputational damage, and familial tensions was not sufficient to constitute emotional distress for an IIED claim). The Court will therefore grant the Motion to Dismiss the IIED claim in Count 6.

## CONCLUSION

For the foregoing reasons, the Motion will be GRANTED IN PART and DENIED IN PART. The Motion will be granted as to Counts 3, 4, and 6. The Motion will be denied as to Counts 1, 2, and 5. A separate Order shall issue.

Date:   September 8, 2023

THEODORE D. CHUANG
United States District Judge